1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                        FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11    KENNETH LEE TAYLOR,                      No.  2: 19-cv-0450 TLN KJN P
12              Plaintiff,
13         v.                                  FINDINGS AND RECOMMENDATIONS
14    KUERSTON, et al.,
15              Defendants.
16
17    I.       Introduction
18         Plaintiff is a state prisoner, proceeding through counsel, with a civil rights action pursuant
19    to 42 U.S.C. § 1983.  This action proceeds on the original complaint against defendants Medina
20    and Chavez.  Plaintiff alleges that defendants used excessive force against him on June 27, 2017.
21    Plaintiff also alleges that defendant Medina retaliated against him on June 27, 2017, for plaintiff's
22    legal activities.
23         Pending before the court is defendants' summary judgment motion.  (ECF No. 60.)  This
24    action proceeds on plaintiff's third opposition filed April 16, 2020.  (ECF No. 69.)  On June 19,
25    2020, defendants filed a reply.  (ECF No. 75.)
26         For the reasons stated herein, the undersigned recommends that defendants' motion be
27    granted in part and denied in part.
28    ////

1

1    II.    Plaintiff's Third Opposition and Defendants' Reply

2       A.   Plaintiff's Third Opposition

3       As discussed above, this action proceeds on plaintiff's third opposition to defendants'

4    summary judgment motion.  The undersigned granted plaintiff leave to file a second opposition

5    after finding that the original opposition was not properly supported.  (ECF No. 52.)  The

6    undersigned granted defendants' motion to strike plaintiff's second opposition.  (ECF No. 67.)

7       Defendants moved to strike the third opposition in its entirety because it cited new evidence

8    and failed to set forth how all of the evidence cited in the third opposition responded to

9    defendants' statement of undisputed facts.  The undersigned denied defendants' motion to strike

10   plaintiff's third opposition in its entirety, but granted the motion to strike three new pieces of

11   evidence cited in the third opposition that were not cited in the original opposition, (i.e., (1) Allen

12   deposition at 44: 18-19 (cited to dispute defendants' undisputed fact no. 52); (2) Medina

13   deposition at 11 (cited to dispute defendants' undisputed fact no. 55); and (3) Allen deposition at

14   49: 13-15 (cited to dispute defendants' undisputed fact no. 77.)  (See ECF Nos. ECF Nos. 72, 74.)

15      As discussed herein, in the third opposition, plaintiff fails to identify any evidence in

16   support of several of his disputes with defendants' undisputed facts.  The undersigned observes

17   that the court cannot consider plaintiff's complaint as evidence in support of his opposition

18   because it is signed by plaintiff's counsel and not plaintiff.

19          An attorney may submit a declaration as evidence to a motion for
20      summary judgment. However, the declaration must be made upon
        personal knowledge and sets forth fact that would admissible in
21      evidence if the attorney were testifying at trial. See Fed.R.Civ.P.
        56(e). A "hearsay assertion that would not be admissible if testified
22      to at trial is not competent material for a Rule 56 affidavit." See, e.g.,
        Sarno v. Douglas Elliman–Gibbons & Ives, Inc., 183 F.3d 155, 160
23      (2nd Cir.1999). An affidavit shall "be made on personal knowledge,
        shall set forth such facts as would be admissible in evidence, and
24      shall show affirmatively that the affiant is competent to testify to the
        matters stated therein." Fed.R.Civ.P. 56.

25

26   Clark v. County of Tulare, 755 F.Supp.2d 1075, 1083 (E.D. Cal. Nov. 17, 2010); see also Kelley

27   v. Eli Lilly and Co. 517 F.Supp.2d 99, 104 (D.C. Apr. 27, 2007) ("Since the complaint in this

28   case has only been signed by the attorney for the plaintiff and not the plaintiff herself, averments

1  made in the complaint shall not be considered evidence in this motion for summary judgment.")

2        B.  <u>Defendants' Reply</u>

3      Defendants attached new evidence to the reply to plaintiff's third opposition.  For example,

4  defendants submitted a declaration by defendant Medina in support of the reply.  (<u>See</u> ECF No.

5  75-3.)

6      This court has discretion to consider new evidence offered by defendants in the reply brief.

7  <u>See</u> <u>Provenz v. Miller</u>, 102 F.3d 1478, 1483 (9th Cir. 1996) ("We agree with the Seventh Circuit,

8  which held that "[w]here new evidence is presented in a reply to a motion for summary judgment,

9  the district court should not consider the new evidence without giving the [non-]movant an

10  opportunity to respond.") (citing <u>Black v. TIC Inv. Corp.</u>, 900 F.2d 112, 116 (7th Cir. 1990)).

11      Rather than granting plaintiff leave to file a sur-reply in order to respond to the new

12  evidence attached to defendants' reply, the undersigned exercises his discretion not to consider

13  this new evidence.  Therefore, in evaluating defendants' summary judgment motion, the

14  undersigned considers only the evidence cited by defendants in the summary judgment motion.

15      III.     <u>Summary Judgment Standards</u>

16      Summary judgment is appropriate when it is demonstrated that the standard set forth in

17  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

18  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

19  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

20
21      Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
22
23

24  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

25  56(c)).

26      "Where the nonmoving party bears the burden of proof at trial, the moving party need

27  only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

28  <u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

4

1   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

2   amendments).

3        In resolving a summary judgment motion, the court examines the pleadings, depositions,

4   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

5   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

6   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

7   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

8   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

9   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

10  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

11  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

12  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

13  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

14  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

15       IV.    Plaintiff's Allegations

16       This action proceeds on the original complaint.  (ECF No. 1.)  Plaintiff alleges that he is

17  well known for suing correctional officers.  (Id. at 6.)  Plaintiff alleges that on January 15, 2016,

18  he filed a lawsuit against correctional officers, including M. Medina (Case 3:16-cv-0266 VC).[1]

19  (Id.)

20       Plaintiff alleges that prior to June 26, 2017, he was diagnosed by the California

21  Department of Corrections and Rehabilitation ("CDCR") as having coronary artery disease,

22  cataracts, chest pain, chronic LBP, carpal tunnel syndrome, hypertension, hyperlipemia, lumbar

23  spondylosis, osteoarthritis of the knee and proteinuria.  (Id.)  Due to his serious and chronic

24  medical conditions, plaintiff was diagnosed as being permanently disabled.  (Id.)  Plaintiff alleges

25  that he was issued a cane per the Americans with Disabilities Act ("ADA").  Plaintiff alleges that

26  he was also issued a yellow vest that reads on the front and back "Mobility Impaired."  (Id.)

27

28  [1]  M. Medina is not defendant Medina named in this action.  It also appears from the evidence that
    M. Medina is not related to defendant Medina.

5

1    Plaintiff alleges that on June 27, 2017, at approximately 12:45, the tower nine control

2    officer, J. Gallegos, announced that plaintiff had been summoned by his counselor, CCI Truong,

3    in building twelve.  (Id.)  Officer Gallegos issued plaintiff a pass to see his counselor in building

4    twelve.  (Id.)  Plaintiff alleges that he was summoned to see his counselor in order to review his

5    transcript in Taylor v. Miller, 3:16-cv-00874 VC.  (Id. at 2.)

6    Wearing his "Mobility Impaired Vest" and using his cane, plaintiff exited building nine

7    and crossed the yard toward building twelve.  (Id. at 6.)  Plaintiff passed approximately six

8    correctional officers on the Southern Mexican handball court.  (Id.)  "Where the fuck do you

9    think you're going?" allegedly yelled defendant Medina from the group of officers.  (Id.)

10   Plaintiff told defendant Medina that he was going to see counselor Truong who had summoned

11   him.  (Id. at 7.)  Defendant Medina allegedly stated, "Your ass ain't suing nobody today!  And

12   you're not seeing no fucking counselor."  (Id.)

13   Plaintiff showed defendant Medina the pass he had been issued by J. Gallegos.  (Id.)

14   Defendant Medina tore up the pass, declaring:  "Now you don't have no fucking pass."  (Id.)

15   Plaintiff demanded to speak with defendant Medina's supervisor, Sergeant Smith.  (Id.)

16   Defendant Medina refused, stating, "You ain't seeing no sergeant either."  (Id.)

17   A second correctional officer, defendant Chavez, came over and stood alongside

18   defendant Medina.  (Id.)  Plaintiff insisted that he speak with Sergeant Smith.  (Id.)  Defendant

19   Medina refused.  (Id.)

20   Defendant Medina gave plaintiff the choice to either "cuff up and I'll escort you back to

21   building nine or you're going to have a real problem."  (Id.)  Plaintiff offered his left wrist to

22   defendant Medina and explained that because of his medical condition, he needed to be

23   handcuffed in front of his body so he could use his cane.  (Id.)

24   Defendant Medina snatched plaintiff's left hand, twisted it behind plaintiff's back and

25   raised it up toward his head.  (Id.)  Defendant Chavez then knocked away plaintiff's cane,

26   grabbed plaintiff's right hand and twisted it behind plaintiff's back and up toward his head.[2]  (Id.)

27

28   [2]  In the summary judgment pleadings, plaintiff uses the term "chicken wing" to describe
     defendants' alleged acts of pulling his arms up toward his head while handcuffing him.

1    Plaintiff cried out in pain as defendants Medina and Chavez then took him to the ground.

2    (Id.)  On the ground, plaintiff spasmed and wailed.  (Id.)  Plaintiff was later taken by ambulance

3    to San Joaquin General Hospital.  (Id. at 8.)

4    As legal claims, plaintiff alleges that defendants Medina and Chavez used excessive force

5    in violation of the Eighth Amendment.  Plaintiff also alleges that defendant Medina retaliated

6    against him for suing correctional officers.  Plaintiff specifically alleges that defendant Medina

7    retaliated against him for filing Taylor v. Medina, 3:16-cv-0266 VC, by denying him access to his

8    counselor.  (Id. at 6.)  Plaintiff also appears to allege that defendant Medina retaliated against him

9    for filing case 16-cv-00874 VC, the action for which plaintiff was allegedly summoned to review

10   the deposition.  (Id. at 18.)

11   V.    Retaliation

12   A.   Legal Standard

13   To prevail on a retaliation claim, a plaintiff must allege and prove the defendants

14   retaliated against him for exercising a constitutional right and the retaliatory action did not

15   advance legitimate penological goals or was not narrowly tailored to achieve such goals.  Hines v.

16   Gomez, 108 F.3d 265, 267 (9th Cir. 1997).  A prisoner suing a prison official under § 1983 for

17   retaliation for engaging in protected speech must allege "the type of activity he engaged in was

18   protected under the first amendment and that the state impermissibly infringed on his right to

19   engage in the protected activity."  Rizzo v. Dawson, 778 F.2d 527 (9th Cir. 1983).

20
21   > Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.
22
23

24   Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).  "Mere speculation that defendants

25   acted out of retaliation is not sufficient."  Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014).

26   Pursuing a civil rights legal action is protected under the First Amendment.  Rizzo v. Dawson,

27   778 F.2d at 532.

28   ////

B. Discussion

Plaintiff alleges that defendant Medina denied him access to his counselor in retaliation for plaintiff's lawsuits against prison officials.  Defendant Medina moves for summary judgment as to this claim on two grounds:  1) there is no evidence that defendant Medina had a retaliatory motive; and 2) defendant Medina's actions advanced legitimate penological goals.

1. Did Defendant Medina's Actions Serve a Legitimate Penological Goals?

Defendants argue that defendant Medina's actions served a legitimate penological goal of preserving order, discipline and security.  See Procunier v. Martinez, 416 U.S. 396, 412 (1974), limited by Thornburgh v. Abbott, 490 U.S. 401 (1989) (legitimate penological interests include "the preservation of internal order and discipline" as well as "the maintenance of institutional security.")

Defendants allege that defendant Medina denied plaintiff access to his counselor because plaintiff was out of bounds because he had an incomplete pass.  (ECF No. 45 at 28.)  Defendants also allege that defendant Medina did not allow plaintiff to see his counselor because he (defendant Medina) knew that there was no counselor in Building 12 at that time.  (Id. at 28.)

In the opposition, plaintiff only addresses defendants' claim that plaintiff was out of bounds because he had an incomplete pass.

*Was Plaintiff Out of Bounds Due to Incomplete Pass?*

In support of the argument that plaintiff was out of bounds because his pass was incomplete, defendants cite defendant Medina's declaration filed in support of the summary judgment motion.  (ECF No. 45-1 at 5 (defendants' undisputed fact no. 19).)  In his declaration, defendant Medina states that plaintiff's pass was not filled out correctly because it only stated plaintiff's name, the date, a reference to Correctional Counselor Truong, and B-12.  (ECF No. 45-4 at 3.)  Because the yard was closed at that time, and because plaintiff was not heading toward the pill line and he did not have a legitimate pass that would allow him to remain in the area, plaintiff was considered out of bounds.  (Id.)

Attached to defendant Medina's declaration is a copy of the alleged incomplete pass.  (Id. at 8.)  The pass is not completely filled out in that it does not state who issued the pass.  (Id.)  The

8

1   pass also does not contain plaintiff's CDC number or housing number.  (Id.)  At his deposition,

2   defendant Medina testified that an incomplete pass is abnormal.  (Medina deposition at 24.)

3   Defendant Medina testified that he thought it was possible that plaintiff made up the pass himself.

4   (Id. at 25.)

5          In his opposition, plaintiff does not dispute that a legitimate penological goal is to return

6   an inmate with an incomplete pass to his housing unit.  However, plaintiff argues that the pass

7   attached to defendant Medina's declaration is not the pass that plaintiff gave him.  Plaintiff argues

8   that he had a complete pass on the day of the incident.

9          In support of his claim that he had a complete pass, plaintiff cites the deposition testimony

10  of inmate Allen, who testified that on the day of the incident, he heard plaintiff's name called for

11  a ducat to see his counselor.  (Allen deposition at 30:17-20.)  Plaintiff also argues that the fact

12  that he did not receive a disciplinary chrono for having a forged pass also undermines defendants'

13  claim that the pass was forged.  In further support of his claim that the pass attached to defendant

14  Medina's declaration is not the pass plaintiff gave to him, plaintiff observes that the pass

15  allegedly confiscated by defendant Medina has still not been produced.  Instead, defendant

16  Medina only produced a photocopy of the pass.

17         Plaintiff's failure to receive a rules violation report for having an incomplete pass and

18  inmate Allen's testimony that he was with plaintiff when he received the pass is some evidence

19  that plaintiff had a complete pass to see his counselor.  However, it is also possible that plaintiff

20  received a pass that had not been filled out completely through no fault of his own.[3]

21         However, the undersigned need not further consider whether the pass was complete or not

22  because, for the reasons stated herein, it is undisputed that defendant Medina denied plaintiff

23  access to his counselor because there was no counselor in Building 12, which promoted the

24  legitimate penological goal of preserving order and security.

25  ////

26  ////

27  _____

28  [3]  Plaintiff does not cite any other evidence in support of his claim that the pass was complete,
    such as his own deposition testimony.

1            *Alleged Denial of Access to Counselor Because There Was No Counselor in the Office*

2            Defendants allege that defendant Medina denied plaintiff access to his counselor because

3    there was no counselor in Building 12.  In undisputed fact no. 16, defendants state that because

4    defendant Medina had just left Building 12 and did not see a counselor there, he asked plaintiff

5    who was his counselor.  (See Defendants' Undisputed Fact no. 16 (ECF No. 69-1 at 5 (citing

6    Medina deposition at 18; Medina declaration at ¶ 11).)  In response to defendants' statement of

7    undisputed fact no. 16, plaintiff stated, "Undisputed that Medina testified to this fact."  (ECF No.

8    69-1 at 5.)

9            Plaintiff offers no evidence contradicting defendants' evidence that defendant Medina

10   denied plaintiff access to his counselor because Medina had just returned from the restroom and

11   saw that there was no counselor in the office.  For example, plaintiff offers no evidence

12   demonstrating that there was a counselor in Building 12 at the time defendant Medina denied him

13   access to his counselor.

14           Although neither party cites this evidence, the undersigned observes that plaintiff testified

15   at his deposition that at the time defendant Medina denied plaintiff access to his counselor,

16   defendant Medina told him, "Ain't no fucking counselor up in there.  I just come up out there."

17   (Plaintiff's deposition at 39: 8-9.)  Thus, plaintiff apparently does not dispute that defendant

18   Medina told him that there was no counselor in Building 12.

19           Based on the undisputed evidence discussed above, the undersigned finds that it is

20   undisputed that defendant Medina denied plaintiff access to his counselor, in part, because there

21   was no counselor in Building 12.  The undersigned further finds that defendant Medina's refusal

22   to allow plaintiff to see his counselor because there was no counselor in Building 12 was

23   reasonably related to the legitimate penological interest of preserving institutional order,

24   discipline and security.  Even assuming plaintiff's pass was complete, defendant Medina properly

25   denied plaintiff access to his counselor because there was no counselor in Building 12.

26           Even if a defendant acts out of an improper motive, a retaliation claim will fail if he or she

27   would have taken the action complained of without the impetus to retaliate.  Hartman v. Moore,

28   547 U.S. 250, 260 (2006); Riley v. Roach, 572 Fed. App'x 504, 506 (9th Cir. 2014).  Thus, even

1   if defendant Medina denied plaintiff access to the counselor in retaliation for plaintiff's lawsuits,

2   as alleged by plaintiff, defendant Medina also legitimately denied plaintiff access to his counselor

3   because there was no counselor in the Building 12 counselor's office.  On these grounds,

4   defendant Medina should be granted summary judgment as to plaintiff's retaliation claim.

5          Defendant Medina also moves for summary judgment as to plaintiff's retaliation claim on

6   the grounds that he did not have a retaliatory motive.  Because the undersigned finds that

7   defendant Medina had a legitimate reason to deny plaintiff access to his counselor, the

8   undersigned need not address defendants' argument that defendant Medina did not have a

9   retaliatory motive when he denied plaintiff access to his counselor.

10         VI.    Excessive Force

11         Plaintiff alleges that defendants used excessive force by applying handcuffs behind his

12  back, when they "chicken winged" him while applying the handcuffs, and when they threw him

13  to the ground.

14         A.    Legal Standard

15         When prison officials use excessive force against prisoners, they violate the inmates'

16  Eighth Amendment right to be free from cruel and unusual punishment."  Clement v. Gomez, 298

17  F.3d 898, 903 (9th Cir. 2002).  In order to establish a claim for the use of excessive force in

18  violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force

19  maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore

20  discipline.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In making this determination, the court

21  may evaluate (1) the need for application of force, (2) the relationship between that need and the

22  amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any

23  efforts made to temper the severity of a forceful response.  Id. at 7; see also id. at 9-10 ("The

24  Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

25  constitutional recognition de minimis uses of physical force, provided that the use of force is not

26  of a sort repugnant to the conscience of mankind." (internal quotation marks and citations

27  omitted)).

28  ////

11

"Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979); Whitley v. Albers, 475 U.S. 312, 321-22 (1986).  Courts must be hesitant "to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320.

B. Did Defendants Use Excessive Force When They Applied Handcuffs Behind Plaintiff's Back?

1. Undisputed Facts

It is undisputed that plaintiff is a 66 years old inmate. (ECF No. 58-1 at 1 (undisputed fact no. 1).)  It is undisputed that defendant Medina ordered plaintiff to return to his housing unit. (Id. at 9 (undisputed fact no. 31).)  It is also undisputed that plaintiff refused this order. (Id. (undisputed fact no. 32).)  It is undisputed that plaintiff became argumentative and stated, "you done lost your fucking mind.  I ain't going no place." (Id. at 10-11. (undisputed fact nos. 33, 34).)  It is undisputed that plaintiff asked defendant Medina to call the sergeant. (Id. (undisputed fact no. 35).)  It is undisputed that defendant Medina told plaintiff that he would not get to see the sergeant. (Id. (undisputed fact no. 36).)

It is undisputed that after defendant Medina denied plaintiff's request to see the sergeant, the dispute between plaintiff and defendant Medina continued. (Id. at 11 (undisputed fact no. 37).)  The parties disagree whether the dispute involved only plaintiff arguing with defendant Medina, or whether defendant Medina also argued with plaintiff. (Id.)

It is undisputed that defendant Medina ordered plaintiff again to go back to his housing unit and gave him the option to either voluntarily go back to his housing unit or to be handcuffed and escorted to his housing unit. (Id. at 12 (undisputed fact no. 39).)

It is undisputed that a disruptive inmate can cause a security and safety risk in many ways, including, but not limited, to the risk that he may still try to attack staff, the risk that his behavior might be a decoy to cover for other inmates who may plan to cause a disruption, or the risk that the inmate's disruptive behavior might entice other inmates to cause a disruption. (Id.

12

1   (undisputed fact no. 41).)

2           It is undisputed that defendant Medina told plaintiff that he would put handcuffs on

3   plaintiff.  (Id. (undisputed fact no. 42).)  It is undisputed that plaintiff then gave defendant Medina

4   his left hand to submit to handcuffs.  (Id. (undisputed fact no. 43).)

5           It is undisputed that defendants handcuffed plaintiff behind his back.

6           It is undisputed that for mobility-impaired inmates who should not be handcuffed behind

7   the back, waist restraints are typically used.[4]  (Id. at 16 (undisputed fact no. 57).)  Waist restraints

8   (also called side shackles) have the chains connected to the hands and they allow the hands to be

9   on the side rather than in the back.  (Id. at 17 (undisputed fact no. 58).)

10          CDCR policies and procedures only require waist restraints to be used with mobility-

11  impaired inmates in non-emergent situations, such as inmate transports to an outside appointment.

12  (Id. (undisputed fact no. 59).)

13          Regular officers only carry regular handcuffs.  (Id. (undisputed fact no. 60).)  In a non-

14  emergent situation, if a mobility impaired inmate is moved or transferred and if the officer has

15  time, the officer has to report to the building and get waist restraints.  (Id. at 18 (undisputed fact

16  no. 62).)

17          If inmates have mobility restrictions, under the policies and regulations, they are required

18  to carry a CDCR form 7410 that sets forth any restrictions on their person at all times.  (Id.

19  (undisputed fact no. 63).)[5]

20          At the time of the handcuffing, plaintiff did not show defendants Medina or Chavez any

21

22  [4]  Plaintiff contends that the definition of the word "typically" is vague.  (Id.)

23  [5]  In support of undisputed fact no. 63, defendants cite the deposition testimony of Sergeant
    Smith.  (ECF No. 69-1 at 19.)  Sergeant Smith testified that inmates are required to carry CDCR
24  Forms 7410 on their person.  (Smith deposition at 39: 2-12; 40: 13-14.)
            In the response to defendants' undisputed fact no. 63, plaintiff stated that he "denies that
25  any policy or regulation requiring inmates to carry a CDCR form 7410 at all times is followed at
    CSP Solano.  Taylor asserts that the practice at CSP Solano is that medical forms are kept on
26  record in the inmate's housing building.  Taylor asserts that Medina never asked him for a form
    7410 because no prisoner is expected to carry one at all times." (ECF No. 69-1 at 18.)  However,
27  plaintiff cites no evidence in support of this assertion.  Accordingly, the undersigned deems
    defendants' undisputed fact no. 63 undisputed.
28

1    paperwork indicating that he should not be handcuffed in the back.  (Id. at 18-19 (undisputed fact

2    no. 65).)  Plaintiff did not have an accommodation chrono for handcuffing restrictions on the day

3    of the incident.  (Id. (undisputed fact no. 66).)

4        Plaintiff's records show that he had an accommodation chrono for special cuffing as of

5    August 4, 2016, but that special cuffing chrono was removed almost a year before the incident

6    and not re-issued until October 13, 2017.  (Id. at 19 (undisputed fact no. 67).)

7        For purposes of these findings and recommendations, the undersigned also finds that it is

8    undisputed that at the time of the incident, plaintiff wore an ADA vest and had a cane.

9        Neither defendant Medina nor defendant Chavez were aware of any restrictions based on

10   which plaintiff was not supposed to be handcuffed in the back.[6]  (Id. (Undisputed Fact No. 64.))

11   Plaintiff did not tell defendants that he could not be handcuffed in the back.  (Id.)

12       2.   Discussion

13           Need for Application of Force

14       It is undisputed that defendants applied the handcuffs based on plaintiff's failure to obey

15   the order to return to his housing unit.  Defendants also argue that they applied the handcuffs

16   based on plaintiff's disruptive behavior, although the parties dispute the extent of plaintiff's

17   disruptiveness.

18       In his opposition, plaintiff argues that his refusal to return to his housing unit was

19   "nothing more than a request to see the sergeant, in effect an appeal for the enforcement of the

20   _____

21   [6] In support of undisputed fact no. 64, defendants cite defendant Medina's declaration.  In his
     declaration, defendant Medina states that he was not aware of any restrictions based on which
22   plaintiff could not be handcuffed in the back.  (ECF No. 45-4 at 4 (¶ 25).)  Defendant Medina also
     states that plaintiff did not tell him that he should not be handcuffed in the back.  (Id.)
23   Defendants also cite defendant Chavez's deposition testimony at p. 124: 9-17.  Defendant Chavez
     testified that he did not know that plaintiff had restrictions at the time of the incident.  (Chavez
24   deposition at 124: 9-17.)
         In response to defendants' undisputed fact no. 64, plaintiff alleges that defendants had
25   actual notice that he should not be handcuffed in the back because plaintiff told defendants that he
     could not be handcuffed behind his back.  (ECF No. 69-1 at 19.)  However, plaintiff cites no
26   evidence in support of his claim that he made this statement to defendants.  (Id.)  Plaintiff's points
     and authorities filed in support of the opposition also fails to cite any evidence in support of this
27   claim.  (See ECF No. 69.)  Accordingly, the undersigned finds that plaintiff has not created a
     material dispute as to whether he told defendants he could not be handcuffed in the back.
28

1  rules of the institution by an officer that would respect and enforce those rules." (ECF No. 69 at

2  7.) However, even if plaintiff disagreed with defendant Medina's order, an inmate's refusal to

3  comply with orders may present a threat to the safety and security of a prison. Lewis v. Downey,

4  581 F.3d 467, 476 (7th Cir. 2009); Whitley, 475 U.S. at 320-22; Spain v. Procunier, 600 F.2d

5  189, 195 (9th Cir. 1979).

6      "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they

7  will obey, and when they will obey them.... Inmates are and must be required to obey orders.

8  When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a

9  portion of the institution and its officials. Such refusal and denial of authority places the staff and

10  other inmates in danger." Lewis, 581 F.3d at 476 (quoting Soto v. Dickey, 744 F.2d 1260, 1267

11  (7th Cir. 1984)).

12      Based on plaintiff's failure to obey the order to return to his housing unit and continued

13  arguing, the undersigned finds that defendant Medina's decision to apply handcuffs was

14  reasonable under the circumstances and in furtherance of the legitimate penological interest in

15  maintaining order and security.

16      *Discussion--Relationship Between the Need of Force and Amount of Force Used*

17      The undersigned herein considers whether defendants should have obtained waist chains

18  for plaintiff instead of applying the handcuffs behind plaintiff's back.

19      It is undisputed that plaintiff did not have an accommodation chrono for handcuffing

20  restrictions on the day of the incident. It is undisputed that if plaintiff had a mobility restriction

21  that prevented him from being handcuffed behind his back, he was required to carry the CDCR

22  7410 containing this restriction at all times. It is undisputed that plaintiff did not tell defendants

23  that he should not be handcuffed behind the back at the time they handcuffed him.

24      Because plaintiff did not have a CDCR Form 7410 stating that he should not be

25  handcuffed behind his back, and plaintiff did not tell defendants that he should not be handcuffed

26  behind his back, the undersigned finds that defendants did not act unreasonably in failing to

27  obtain waist chains for plaintiff.

28      Plaintiff argues that defendants had "constructive notice" that he should not have been

15

1  handcuffed behind the back because he was wearing an ADA vest and used a cane.  However,

2  because plaintiff did not have a CDCR Form 7410 and did not tell defendants he should not be

3  handcuffed behind his back, the undersigned does not find that plaintiff's ADA vest and cane

4  gave defendants "constructive notice" that he should not be handcuffed behind his back.

5       For the reasons discussed above, this factor weighs in defendants' favor.

6       *Discussion—The Threat Reasonably Perceived by Defendants/Efforts To Temper the*

7  *Severity*

8       While plaintiff did not have the CDCR Form 7410 form stating that he could not be

9  handcuffed behind his back, the record contains no evidence demonstrating that defendants were

10 precluded from obtaining the waist restraints even though plaintiff did not have a 7410 form.

11 Accordingly, the undersigned considers whether defendants properly exercised their discretion

12 not to obtain waist restraints.

13      Defendants argue that they could not obtain the waist restraints for plaintiff because the

14 situation constituted an emergency.  Plaintiff argue that defendants should have obtained the

15 waist chains because the situation was not an emergency.

16      At the outset, the undersigned observes that in support of their argument that the situation

17 with plaintiff constituted an emergency, defendants cite the deposition testimony of Sergeant

18 Smith.  (See ECF No. 45-1 at 15 (undisputed fact no. 68).)  Sergeant Smith testified that the

19 situation became an emergency when plaintiff refused to do what he was instructed.  (Smith

20 deposition at 90-91.)  However, the court considers the threat reasonably perceived by the

21 responsible officials in determining whether force was excessive.  Hudson, 503 U.S. at 7.  In this

22 case, the responsible officials were defendants Medina and Chavez.  Defendant Smith was not

23 present during the handcuffing incident.

24      In support of their argument that the situation with plaintiff became an emergency, which

25 prevented defendants from obtaining waist chains, defendants cite the deposition testimony of

26 defendant Chavez and the declaration of defendant Medina.  (ECF No. 45-1 at 16 (undisputed fact

27 nos. 69, 70).)  At the portion of defendant Chavez's declaration, cited by defendants in undisputed

28 fact no. 69, defendant Chavez testified as follows:

Q: Yeah. But that's not what happened to Kenny; right? He didn't get special restraint. He had regular restraint because you don't—that's the only kind you had on your belt—

A: Yes,

Q: --in the yard. Yeah.

A: And to us, it was considered an emergency in a way.

Q: Oh, it was?

A: Well, because he was being belligerent and wouldn't comply with our orders, so we had to –

Q: Oh.

A: --cuff—cuff him up.

Q: Okay. Because I didn't get the impression that it was an emergency. I thought you had—

A: Well—

Defense Counsel: Objection. Argumentative.

Q: Was it an emergency?

A: I wouldn't say an emergency, but it could have escalated to something further, more.

Q: Because he had a pass.

A: Because he was cussing and being belligerent and getting mad.

Q: And what makes that an emergency situation?

A: He's getting more mad, not being reasonable. So we don't know which –if he's going to be violent or not. That's when—and our discretion was kind of like cuff him up to deescalate the situation.

(Chavez deposition at 122:9—123: 12.)

Defendants also cite page 151 of defendant Chavez's deposition, where he testified, in relevant part, that at the moment, they had to "cuff him quick." (Chavez deposition at 151: 20-21.) Defendants also cite defendant Chavez's deposition testimony at page 12 where he testified, in relevant part:

////

////

17

1    Q:  Did you feel, at that time, when Medina said to –give him the
     choice, that the situation was an emergency situation?
2
     A:  In my opinion, I felt that it was going—yes, it would go –it could
3    have gotten worse.

4    (Chavez deposition at 129: 11-15.)

5          The paragraph of defendant Medina's declaration cited in defendants' statement of

6    undisputed fact no. 69 states,

7          26.  Correctional officers only carry regular handcuffs on them.  Even
          if Taylor had told me that he could not be handcuffed in the back,
8          without any documentation to corroborate that claim, and most
          importantly because of the safety risk that Taylor created by his
9          agitated and non-compliant behavior, I would not have had time to
          get waist restraints to escort Taylor back to his building.
10

11   (ECF No. 45-4 at 4.)

12         In his declaration defendant Medina also states that a disruptive inmate can cause a safety

13   and security risk in many ways, including, but not limited to, the risk that he may still try to attack

14   staff, the risk that his behavior might be a decoy for other inmates who may plan to cause a

15   disruption, or the risk that the inmate's disruptive behavior might entice other inmates to cause a

16   disruption.  (ECF No. 45-4 at 3-4.)  Defendant Medina's explanation regarding the safety risk

17   posed by disruptive inmates is also undisputed fact no. 41.

18         In his opposition, plaintiff argues that there was no emergency and that he did not

19   constitute a safety risk.  Plaintiff cites defendant Medina's deposition testimony that the situation

20   with plaintiff was not an emergency:

21         Q:  Okay.  Was this an emergency situation?

22         A:  A:  No.

23         Q:  Okay.  Non-emergency situation?

24         A:  Nonemergency.

25   (Medina deposition at 43.)

26         In support of the claim that there was no emergency, plaintiff also cites the deposition

27   testimony of inmate Allen.  Inmate Allen testified that he did not see plaintiff clench his fists.

28   (Allen deposition at 117.)  Inmate Allen testified that plaintiff was not physically imposing or

1    aggressive in any way.  (Id.)

2          Plaintiff also disputes defendant Medina's explanation regarding the safety risks posed by

3    disruptive inmates, set forth in undisputed fact no. 41, as it applies to plaintiff.  Plaintiff argues

4    that plaintiff was physically incapable of attacking defendants.  (ECF No. 69-1 at 12.)  Plaintiff

5    also argues that plaintiff cannot be considered a safety threat because other inmates might become

6    disruptive after observing plaintiff's "request to have the sergeant enforce the rules."  (Id. at 13.)

7    Plaintiff argues that plaintiff, "did not yell 'fire' or 'let's get them.'  He asked to see the

8    manager—an appeal to the rules—not a threat of or an enticement to violence."  (Id.)

9          The undersigned finds that the evidence demonstrates that while there may not have been

10   an emergency, defendants reasonably believed that plaintiff's behavior posed a security risk.  For

11   this reason, the undersigned finds that defendants reasonably exercised their discretion not to

12   obtain waist chains, which would have taken extra time.  In making this finding, the undersigned

13   agrees with plaintiff that it is unlikely that plaintiff would have been able to physically attack

14   defendants.  However, plaintiff's claim that his behavior would not incite other inmates is not

15   persuasive.  Plaintiff's characterization of his behavior is inaccurate.  The undisputed evidence

16   shows that plaintiff disobeyed an order to return to his housing unit and argued with defendants.

17   Plaintiff offers no evidence contradicting defendants' evidence that plaintiff's behavior posed a

18   security risk because it could incite other inmates to become disruptive or be a decoy for other

19   disruptive behavior.

20         Assuming defendants should have inferred from plaintiff's ADA vest and cane that he

21   should not be handcuffed behind his back, the undersigned finds that defendants did not act

22   unreasonably when they exercised their discretion not to obtain the waist chains, which would

23   have taken extra time, due to the perceived security risks.

24         For the reasons discussed above, the undersigned finds that this factor favors defendants.

25         *Conclusion*

26         After weighing the evidence, the undersigned finds that defendants did not use excessive

27   force when they handcuffed plaintiff behind the back.

28   ////

19

1    First, the undersigned finds that defendants had cause to apply the handcuffs based on

2    plaintiff's failure to obey orders and continued arguing.

3    Second, the undersigned finds that the record does not contain sufficient evidence

4    demonstrating that defendants should have known or inferred that plaintiff should not be

5    handcuffed behind his back.  Plaintiff did not have a CDCR Form 7410 for this accommodation at

6    the time of this incident.  Plaintiff also did not tell defendants that he should not be handcuffed

7    behind his back.  Based on these undisputed facts, the undersigned finds that defendants did not

8    apply the handcuffs behind plaintiff's back maliciously and sadistically to cause harm, but in a

9    good-faith effort to maintain discipline.  See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

10   Even assuming defendants should have inferred that plaintiff should not be handcuffed

11   behind his back based on his ADA vest and cane, the record demonstrates that defendants did not

12   unreasonably exercise their discretion not to obtain the waist chains, which would have taken

13   extra time, based on the security risks created by plaintiff's behavior.  "Prison administrators ...

14   should be accorded wide-ranging deference in the adoption and execution of policies and

15   practices that in their judgment are needed to preserve internal order and discipline and to

16   maintain institutional security."  Bell v. Wolfish, 441 U.S. 520, 547 (1979); Whitley, 475 U.S. at

17   321-22.  Courts must be hesitant "to critique in hindsight decisions necessarily made in haste,

18   under pressure, and frequently without the luxury of a second chance."  Whitley, 475 U.S. at 320.

19   Accordingly, for the reasons discussed above, the undersigned recommends that

20   defendants be granted summary judgment as to plaintiff's claim that they used excessive force in

21   violation of the Eighth Amendment when they handcuffed him behind his back.

22       C.   Did Defendants "Chicken Wing" Plaintiff and Throw Him to the Ground in Violation

23            of the Eighth Amendment?

24   Plaintiff alleges that as defendants applied the handcuffs behind his back, they used

25   excessive force in violation of the Eighth Amendment, when they "chicken winged" him,

26   meaning that they pulled his arms up behind his head.  Plaintiff alleges that defendants then "took

27   him to the ground," in violation of the Eighth Amendment

28   ////

1          1.   Undisputed Facts

2                 Defendants' summary judgment motion contains 10 undisputed facts addressing plaintiff's

3     claim that they chicken-winged him and then threw him to the ground, i.e., defendants'

4     undisputed fact nos. 43-52.  (ECF No. 69-1 at 13-16.)  Defendants' summary judgment motion

5     also contains undisputed facts regarding plaintiff's medical care following the incident, which

6     they argue demonstrates that they did not chicken-wing plaintiff or throw him to the ground, i.e.,

7     defendants' undisputed fact nos. 70-81.

8                 Regarding defendants' undisputed facts nos. 43-52, plaintiff does not dispute defendants'

9     undisputed fact nos. 43 and 51.  Plaintiff disputes defendants' undisputed fact nos. 44-50 and 52.

10    (Id. at 13-16.)  However, plaintiff cites no evidence in support of his dispute of defendants'

11    undisputed fact nos. 44-50.  (Id. at 13-16.)  Plaintiff's alleged disputes with defendants'

12    undisputed fact nos. 44-50 consists of allegations without citation to any evidence supporting

13    these allegations.[7]  The undersigned has reviewed plaintiff's opposition and can find no evidence

14    in support of these allegations.  Accordingly, based on plaintiff's failure to cite any evidence in

15    support of his dispute with defendants' undisputed fact nos. 44-50, the undersigned finds that

16    these facts are undisputed.

17                In accordance with the above discussion, the undersigned finds that the following facts

18    regarding plaintiff's claim that defendants chicken-winged plaintiff and threw him to the ground

19    are undisputed.

20                Plaintiff gave defendant Medina his left hand to submit to handcuffs.  (ECF No. 69-1 at 13

21    (defendants' undisputed fact no. 43).)

22                Plaintiff extended his left arm sideways towards defendant Medina, after which defendant

23    Medina guided plaintiff's left arm behind his lower back.  (Id. (defendants' undisputed fact no.

24    _____

25    [7]  For example, defendants' undisputed fact no. 47 states, "Defendants, who were each standing
      to Taylor's left side and right side, held Taylor up and assisted him so that he could walk on his
26    own feet."  (ECF No. 69-1 at 14.)  In response, plaintiff states, "Disputed in part.  Undisputed that
      the officers standing on the left and right sides of Taylor.  Disputed that they 'held' him up and
27    'assisted' him down.  Taylor asserts that they pulled his arms up and snapped his back before
      slamming him down to the ground."  (Id.)  Plaintiff cites no evidence in support of his claim that
28    defendants pulled his arms up and snapped his back before slamming him down to the ground.

1    44).)

2           Defendant Chavez, who had walked over to the area where defendant Medina and plaintiff

3    were standing when plaintiff started becoming confrontational to provide coverage, took

4    plaintiff's right hand and guided it behind plaintiff's lower back, after which defendant Medina

5    finished putting the handcuffs on.  (Id. at 13-14 (defendants' undisputed fact no. 45).)

6           Defendant Medina was holding plaintiff's left arm with his right hand, and defendant

7    Chavez was holding plaintiff's right arm with his left hand.  (Id. at 14 (defendants' undisputed

8    No. 46).)

9           Defendants, who were each standing to plaintiff's left side and right side, held plaintiff up

10   and assisted him so that he could walk on his own feet.  (Id. (undisputed fact no. 47).)

11          Once defendants made their first step to escort plaintiff to his housing unit, plaintiff did

12   not move his feet, tensed up, and started teetering; it seemed as if plaintiff was at risk of going

13   down to the ground to the ground.  (Id. at 14-15 (undisputed fact no. 48).)

14          To prevent plaintiff from going to the ground, defendants countervailed plaintiff's body

15   weight and tried to place him back in an upright position.  (Id. at 15 (undisputed fact no. 49).)

16          A few second later, plaintiff said that his back was hurt and started moving and twitching.

17   (Id. (undisputed fact no. 50).)

18          Prior to that time, plaintiff did not show or express any signs of pain.  (Id. (undisputed fat

19   no. 51).)

20          When plaintiff was brought to the treatment and triage area, plaintiff described his chief

21   complaint to Nurse Eaton as "the cops handcuffed me from back and my back went out.  I have

22   lower back pain radiating down the left leg."  (Id. at 21 (Undisputed Fact No. 71 quoting the

23   deposition testimony of Nurse Eaton).)

24          Plaintiff did not tell Nurse Eaton that defendant brought him to the ground or that they

25   chicken winged him that day.[8]  (Id. (Undisputed Fact no. 72).)

26   _____

27   [8]   Nurse Eaton testified at his deposition that plaintiff did not at any point say that officers
     brought him to the ground.  (Eaton deposition at 68.)  While plaintiff disputes that plaintiff did
     not tell Nurse Eaton that defendants brought him to the ground, he cites no evidence in support of
28   this claim.

Nurse Eaton did not observe any symptoms that indicated that plaintiff was chicken-winged that day.  (Id. at 21-22 (Undisputed Fact No. 73).)

When Nurse Eaton examined plaintiff, there were no objective symptoms or signs that what had happened to plaintiff was anything beyond being handcuffed behind his back and plaintiff's chronic back pain.  (Id. at 22 (Undisputed Fact no. 74).)

Inmate Williams testified that defendants handcuffed plaintiff "like a usual cuffing" and that defendants did not chicken-wing plaintiff.  (Id. (Undisputed Fact No. 75 (inmate Williams deposition testimony at 22:18-20; 23:14-16).)

The progress notes from the doctor who examined plaintiff at the prison right after the June 28, 2017 incident indicated that plaintiff stated that a correctional officer twisted his back and both arms when trying to cuff him.  (Id. (undisputed fact no. 78).)

The progress notes from June 28, 2017 do not state that plaintiff told the doctors that the officers slammed or threw him to the ground.  (Id. (undisputed fact no. 79).)

The notes from the doctor at San Joaquin General Hospital who examined plaintiff the day after the incident on June 29, 2017 noted that, "[t]he patient states today as he was going to his counselor [that] he had an altercation event with the guards and claims that guards twisted his back and both arms when they were trying to handcuff him."  (Id. (undisputed fact no. 80).)

The notes from the doctor at San Joaquin General Hospital who examined plaintiff the day after the incident on June 29, 2017 do not state that the officers slammed or threw plaintiff to the ground.  (Id. at 24 (undisputed fact no. 81).)

On August 19, 2017, plaintiff underwent a lumbar spine surgery at San Joaquin General Hospital.  (Id. (undisputed fact no. 82).)

2.   Discussion

*Alleged Chicken-Winging*

The undisputed facts, set forth above, demonstrate that defendants did not chicken-wing plaintiff when they applied the handcuffs.  The undisputed evidence demonstrates that defendants guided plaintiff's hands to his lower back when they handcuffed up.  The undisputed evidence does not show that defendants lifted plaintiff's arms up when they handcuffed him, i.e., chicken-

1  winged him.  Because plaintiff's claim that defendants chicken-winged him is not supported by

2  the undisputed evidence, defendants should be granted summary judgment as to this claim.[9]

3        *Alleged Throwing Plaintiff to the Ground*

4        In defendants' undisputed fact no. 52, defendants contend that they did not throw plaintiff

5  to the ground.  Defendants contend that after plaintiff said his back hurt and started moving

6  around and twitching (defendants' undisputed fact no. 50), while maintaining plaintiff's arm

7  positions, they assisted plaintiff to the ground to place him in a recovery position by laying him

8  on his side.  (ECF No. 69-1 at 16.)  In support of undisputed fact no. 52, defendants cite

9  1) defendant Medina's declaration at ¶ 37; 2) defendant Medina's deposition testimony at 20:16-

10  19, 55:13-14, 136:8-13; 3) defendant Chavez's deposition testimony at 47:18-23, 75:23-24, 80:1-

11  4, 80:15-19, and 81:4-8308; and 4) inmate Williams's deposition testimony at 39:13-24 and 72:6-

12  16.  (Id.)

13        In the declaration and deposition testimony of defendants cited in the opposition,

14  defendants deny that they slammed plaintiff to the ground.  Inmate Williams testified that plaintiff

15  slid to the ground as defendants cuffed him.  (Williams's deposition testimony at 39:13-25.)

16  Inmate Williams testified, "Yeah.  They didn't slam him to the ground and that stuff, no."  (Id. at

17  24-25.)

18        In response to defendants' undisputed fact no. 52, plaintiff cites the following portions of

19  inmate Allen's deposition testimony:  45:7-8, 18-21, 46:7-9, 25, 47:1, 5, 48:22-25.  (Id.)

20  *////*

---

21  [9]  As discussed above, it is undisputed that the doctors who examined plaintiff after the June 28,

22  2017 incident stated that plaintiff reported that he had an altercation with the guards and claimed
that they twisted his back and both arms when they were trying to handcuff him.  Plaintiff's

23  statements to the doctors that defendants twisted his back and arms when they were trying to
handcuff him could simply refer to defendants putting plaintiff's arms behind plaintiff's back

24  when they handcuffed him, as described in the undisputed facts.  The doctors' notes do not state
that plaintiff reported that defendants lifted his arms up behind his back while handcuffing him or

25  "chicken winged" him.

26        Because plaintiff has provided no evidence in support of his claim that defendants
chicken-winged him, and the undisputed facts show that defendants did not chicken-wing

27  plaintiff, the undersigned finds that it is not reasonable to infer from these medical records that
plaintiff's report that defendants twisted his back and arms when they handcuffed him referred to

28  the alleged chicken-winging.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

To put inmate Allen's deposition testimony from page 45 in context, the undersigned cites additional testimony from inmate Allen from this page:

> A:  Yeah.  He had his cane.  I noticed that the cane fell and he went straight to the ground.
>
> Q:  Okay.
>
> A:  In other words, he took him and grabbed him after he grabbed him with his right arm.  He grabbed the other and slung him to the ground.
>
> Q:   I'll need to back that up because I'm a little confused.   I apologize.  That officer, where on Mr. Taylor's arm does he grab?
>
> A:  I seen him just grab his right arm.
>
> Q:  You mean the forearm?
>
> A:  Yeah.  He grabbed his arm, yes.
>
> Q:  Like near his wrist?
>
> A:  Where his handcuffs are.  He was going to take his arm to go—I guess like they did me and tried to wrap it around and pull it behind his back.  But the way he did it he took him straight to the ground with his arm like this.

(Allen deposition at 45: 3-21.)

Inmate Allen also testified, "Grabbed Taylor's arm and slung him in the ground, so—he wasn't trying to take his arm to handcuff him, he was taking his arm to take him to the ground."

(Id. at 46:7-9.)  Inmate Allen also testified,

> Q:  You said that he slung him to the ground.  Which way did Mr. Taylor turn?
>
> A:  Turned like a pretzel, the way he slung him. When he slung him his arm went this way and his legs—
>
> Q:  Which arm?
>
> A:  He grabbed his right arm and slung him like –
>
> Q:  To the right or to the left?
>
> A:  It would be to my right, he slung him, because that's where his face was, it faced the handball court.  So it was the right.  So when he hit the ground I heard Taylor start screaming because you could see the way his back went--

1    (Id. at 46:23-25, 47: 1-9.)

2           Inmate Allen also testified,

3                  When he slung him he went onto his right side.  When he had his
                   hands with the right hand still on Taylor's arm.  So after he swung
4                  him on the ground he hit the side, then he twisted him back and on
                   his stomach.
5

6    (Id. at 48:22-25.)

7           In the reply, defendants argue that inmate Allen's testimony quoted above does not create

8    a triable issue of fact.  (ECF No. 75-1 at 20-21.)  Defendants argue that while inmate Allen

9    claimed that plaintiff was "slung" to the ground, inmate Allen's testimony relating to the incident

10   was so blatantly different from plaintiff's own testimony that no reasonable jury could believe

11   inmate Allen's testimony.  (Id.)  Defendant argues in the reply brief that plaintiff never alleged

12   that he was "bent like a pretzel."  (Id.)

13          As discussed above, the undersigned does not consider any new evidence cited by

14   defendants in the reply brief.  Defendants' statement of undisputed facts addressing the

15   handcuffing incident and, in particular, plaintiff's claim that he was thrown to the ground, does

16   not cite plaintiff's deposition testimony.  Accordingly, the undersigned does not consider

17   defendants' reference to plaintiff's deposition testimony in the reply brief.

18          While defendants argue that the testimony of inmate Allen is not credible, the undersigned

19   cannot make a credibility determination on summary judgment.  Anderson v. Liberty Lobby, Inc.,

20   477 U.S. at 255.  The undersigned finds that inmate Allen's deposition testimony that plaintiff

21   was slung to the ground is sufficient to create a disputed fact as to whether defendants threw

22   plaintiff to the ground.

23          Because a reasonable jury could find that defendants used excessive force based on inmate

24   Allen's deposition testimony, the undersigned recommends that defendants' motion for summary

25   judgment on the grounds that there is no credible evidence that they threw plaintiff to the ground

26   be denied.  See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (plaintiff must establish that prison

27   officials applied force maliciously and sadistically to cause harm, rather than in a good-faith

28   effort to maintain or restore discipline).

1        D.   The Nature and Extent of Plaintiff's Injuries

2              Defendants move for summary judgment as to plaintiff's excessive force claims on the

3    grounds that the handcuffing incident did not cause plaintiff any harm.  Defendants argue that

4    plaintiff did not suffer any new or aggravated injuries.  Thus, defendants argue, plaintiff has

5    failed to meet his burden to prove the required causation of harm.  Citing their undisputed fact no.

6    83, defendants argue that the undisputed evidence shows that plaintiff did not suffer any new or

7    aggravated injuries to his back or neck form the incident.  (ECF No. 45 at 23.)  Citing undisputed

8    fact no. 84, defendants argue that instead plaintiff's alleged injuries and complaints about his

9    neck and his neck and surgery were solely attributable to his pre-existing spinal injuries and

10   degenerative disc disease.  (Id.)

11             The Supreme Court has rejected the notion that a significant injury is required to show

12   excessive force under the Eighth Amendment.  Wilkins v. Gaddy, 559 U.S. 34, 38-39 n. 2 (2010).

13   Plaintiff alleges that he suffered pain as a result of defendants throwing him on the ground.

14   Plaintiff's lack of documented injuries resulting from this incident is not material as to whether

15   plaintiff sufficiently established an excessive force claim.  See Wilkins v. Gaddy, 559 U.S. at 38

16   ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive

17   force claim merely because he has the good fortune to escape without serious injury.").

18             For the reasons discussed above, defendants' motion for summary judgment on the

19   grounds that plaintiff did not suffer any new or aggravated injuries should be denied.

20        E.   Defendant Chavez

21             In the alternative, defendants argue that plaintiff's excessive force claim against defendant

22   Chavez should be dismissed because the evidence shows that defendant Chavez was not involved.

23   Because the undersigned recommends that defendants be granted summary judgment as to

24   plaintiff's claim that they used excessive force when they handcuffed plaintiff behind his back

25   and allegedly chicken-winged him, the undersigned considers whether defendant Chavez was

26   involved in allegedly throwing plaintiff to the ground.

27             In support of their claim that defendant Chavez should be granted summary judgment

28   because he was not involved in the alleged Eighth Amendment violations, defendants cite their

1    undisputed fact no. 77.  In undisputed fact no. 77, defendants state that inmate Allen testified that

2    the officer who was with defendant Medina, i.e., defendant Chavez (whom Allen describes as a

3    white officer) did not touch plaintiff at all during the handcuffing process.  (ECF No. 69-1 at 22-

4    23.)

5            Inmate Allen's testimony that defendant Chavez did not touch plaintiff and "stayed away"

6    is inconsistent with other evidence cited by defendants in their summary judgment motion

7    regarding defendant Chavez's involvement in the handcuffing incident.  For example, in support

8    of defendants' undisputed fact no. 45, defendants cite defendant Chavez's deposition testimony at

9    47: 11-14, where he testified that, "At which time I grabbed, let's see, his right arm from the

10   forearm and his—his hand and moved it to his back."  (See ECF No. 69-1 at 13-14 (defendants'

11   undisputed fact no. 45).)

12           In support of undisputed fact no. 50, defendants also cited defendant Chavez's deposition

13   testimony at 47: 18-23, where he testified, in part,

14                  We laid him down, put him on his left side and he was screaming,
                    you broke my back, you broke—he started naming what we broke…
15

16           Defendants' claim that defendant Chavez did not touch plaintiff during the handcuffing

17   incident, based on the deposition testimony of inmate Allen, is contradicted by other evidence

18   submitted by defendants in support of their summary judgment motion.  Based on this

19   contradictory evidence, the motion for summary judgment on the grounds that defendant Chavez

20   was not involved in the alleged excessive force should be denied.

21           F.  Qualified Immunity

22           *Legal Standard*

23           The Supreme Court has set forth a two-part test for resolving government officials'

24   qualified immunity claims.  See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on

25   other grounds, Pearson v. Callahan, 555 U.S. 223, 236 (2009).  First, the court must consider

26   whether the facts "[t]aken in the light most favorable to the party asserting the injury...show [that]

27   the [defendant's] conduct violated a constitutional right[.]"  Saucier, 533 U.S. at 201.  "If there is

28   no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity."

                                          28

1    Ioane v. Hodges, 903 F.3d 929, 933 (9th Cir.), opinion amended and superseded, 939 F.3d 945

2    (9th Cir. 2018).  "[W]hether a constitutional right was violated...is a question of fact."  Tortu v.

3    Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009).

4            Second, the court must determine whether the right was clearly established at the time of

5    the alleged violation.  Saucier, 533 U.S. at 201.  Once a court determines that "the law was clearly

6    established, the immunity defense ordinarily should fail, since a reasonably competent public

7    official should know the law governing [the official's] conduct."  Harlow v. Fitzgerald, 457 U.S.

8    800, 818-19 (1982).  However, even if the defendant violated a clearly established right, the

9    government official is entitled to qualified immunity if he or she made a reasonable mistake as to

10   what the law requires.  See Saucier, 533 U.S. at 205.

11           The reasonableness inquiry is objective: "the question is whether the officers' actions are

12   'objectively reasonable' in light of the facts and circumstances confronting them, without regard

13   to their underlying intent or motivation."  Graham v. Connor, 490 U.S. 386, 397 (1989).  The

14   plaintiff bears the burden of proving that the right allegedly violated was clearly established at the

15   time of the violation; and if the plaintiff meets this burden, then the defendant bears the burden of

16   establishing that the defendant reasonably believed the alleged conduct was lawful.  See Sorrels

17   v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  "[T]he 'clearly established' inquiry is a question of

18   law that only a judge can decide."  Morales v. Fry, 873 F.3d 817, 821 (9th Cir. 2017).

19           The "judges of the district courts and the courts of appeals should be permitted to exercise

20   their sound discretion in deciding which of the two prongs of the qualified immunity analysis

21   should be addressed first in light of the circumstances in the particular case at hand."  Pearson v.

22   Callahan, 555 U.S. 223, 236 (2009) (explaining the sequence, while "often appropriate," "should

23   no longer be regarded as mandatory").  When the two-part Saucier test "is properly applied, it

24   protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Hernandez v.

25   City of San Jose, 897 F.3d 1125, 1132-33 (9th Cir. 2018) (citations omitted).

26           At the summary judgment phase, although both the "clearly established right" and

27   "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties'

28   conduct or motives, the case cannot be resolved at summary judgment on qualified immunity

                                                    29

1   grounds.  See Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the

2   objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a

3   question of fact best resolved by a jury, [and] only in the absence of material disputes is it a pure

4   question of law.") (internal quotation marks and citations omitted).

5        *Analysis*

6        The undersigned recommends that defendants be granted summary judgment as to all of

7   plaintiff's claims but for the claim that defendants threw plaintiff to the ground.  Accordingly, the

8   undersigned considers whether defendants are entitled to qualified immunity as to this claim.

9        Taking the facts in the light most favorable to plaintiff, the undersigned finds that

10  defendants violated plaintiff's constitutional rights when they allegedly threw him to the ground.

11  The undersigned further finds that a reasonable correctional officer would know that throwing

12  plaintiff to the ground, as alleged, would violate the Eighth Amendment.  For these reasons,

13  defendants are not entitled to qualified immunity as to this claim.

14       Accordingly, IT IS HEREBY RECOMMENDED that defendants' summary judgment

15  motion (ECF No. 45) be granted but for the claim that defendants violated plaintiff's Eighth

16  Amendment rights when they allegedly threw him to the ground.

17       These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22  objections shall be filed and served within fourteen days after service of the objections.  The

23  parties are advised that failure to file objections within the specified time may waive the right to

24  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25  Dated:  July 8, 2020

26

27  Tay450.sj(3)

    KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

28